UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE SUBPOENA DUCES TECUM<br>ISSUED TO STEWART ROBBINS &<br>BROWN, LLC IN THE MATTER OF<br>*WEINER, WEISS & MADISON, APLC<br>AND KANTROW, SPAHT, WEAVER &<br>BLITZER (APLC) v. LESLIE B. FOX*,<br>NO. 16-cv-850 (W.D. La. filed June 16, 2016) | MISCELLANEOUS ACTION<br><br>NO. 17-11-BAJ-RLB |

## ORDER

Before the Court is a Rule 45 Motion to Compel (R. Doc. 1) filed on February 1, 2017 by Weiner, Weiss & Madison, APLC and Kantrow, Spaht, Weaver & Blitzer (APLC) (the Firms). The Firms move the Court to compel a non-party, Stewart Robbins & Brown, LLC (Stewart) to produce documents responsive to the Firms' Rule 45 subpoena duces tecum. Following service of the Motion (R. Doc. 3), Stewart filed a Response in Opposition on February 24, 2017. (R. Doc. 5). After granting the Firms' request for leave (R. Doc. 10) to file their Reply Memorandum (R. Doc. 11), the Court considered the matter submitted. For the reasons given below, the Firms' Motion to Compel is **GRANTED in part** and **DENIED in part**.

I.  **BACKGROUND**

The Firms are plaintiffs in a pending civil action filed against Leslie B. Fox (Ms. Fox) in the Western District of Louisiana for "breach of a contingency fee contract between the Firms and [Ms.] Fox." Complaint at 2, *Weiner Weiss & Madison, APC v. Fox* (*Weiner v. Fox*), No. 16-cv-850 (W.D. La. June 16, 2016), ECF No. 1 (hereinafter referred to as "Complaint"). According to the Complaint, Ms. Fox retained the Firms from June of 2009 until March of 2016 to represent her interests in two Chapter 11 bankruptcy proceedings (the Bankruptcy Proceeding) filed by her then-

husband, Harold Rosbottom. Complaint at 2, ECF No. 1. During that time, the Firms entered into two contingency fee agreements with Ms. Fox, the second of which is at issue in this litigation and entitled the Firms to "40 percent of the cash and other property distributed" to Ms. Fox under the Bankruptcy Plan. Complaint at 22.

The Firms claim that by late 2015, their work on behalf of Ms. Fox and their representation of her was substantially complete. And so, they sought to collect their fees under the second contingency fee agreement, presenting Ms. Fox with a proposed implementation plan in January of 2016. Complaint at 21. Through independent counsel on March 11, 2016, Ms. Fox rejected the Firms' proposed implementation plan because she believed the fee agreement was "unenforceable" and that the Firms were not entitled to the 40 percent she owed under the agreement. Complaint at 21.

On June 16, 2016, the Firms filed suit against Ms. Fox in the Western District of Louisiana claiming first that Ms. Fox "breached the Second Contingency Fee Agreement" and they are therefore "entitled to specific performance" and "a money judgment against Fox for the value of the Firms' contingency fee interest in her property . . . ." Complaint at 21-22. Alternatively, if their "Second Contingency Fee Agreement [with Ms. Fox] be deemed unenforceable . . . then the Firms" believe they "are entitled to recovery in quantum meruit against Fox . . . . commensurate with their contingency fee interest under the Second Contingency Fee Agreement." Complaint at 23.

In her Answer and Counterclaim, Ms. Fox argues, among other things, that the contingency fee agreement was "neither fair nor reasonable" and violated Rule 1.5(a) the Louisiana Rules of Professional Conduct, among others, making it unenforceable. Def.'s Answer & Countercl. at 21-22, *Weiner v. Fox*, No. 16-cv-850 (W.D. La. July 19, 2016), ECF No. 10.

During the course of discovery, the Firms issued a Rule 45 subpoena to a non-party law firm, Stewart Robbins & Brown, LLC (Stewart). (R. Doc. 1-3). Stewart represented the Chapter 11

debtor, Ms. Fox's ex-husband Harold Rosbottom, in the underlying bankruptcy proceeding. The subpoena asked Stewart to produce the following communications:

> All documents in your possession sent to or received from Louis M. Phillips, [the attorney who represented the court-appointed, Chapter 11 trustee in the underlying bankruptcy], relating to the following:
>
> (a) The Bankruptcy Proceedings;
>
> (b) Leslie B. Fox;
>
> (c) The Firms' representation of Leslie B. Fox in the Bankruptcy Proceedings; or
>
> (d) The above-captioned matter.

(R. Doc. 1-3 at 11). Stewart timely objected to the subpoena as overly broad, unduly burdensome and requesting irrelevant information, among other things.[1] (R. Doc. 1-5). Following Stewart's objection, the Firms limited the scope of their request, "eliminating . . . any pleadings and any communications or documents which were also sent to, or which carbon copied, the Firms." (R. Doc. 1 at 2-3). Nonetheless, when Stewart still refused to provide the requested information, the Firms filed the instant Motion to Compel. (R. Doc. 1).

## II.  APPLICABLE LAW

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of discovery as including "any nonprivileged [information] that is relevant to any party's claim or defense and proportional to the needs of the case," regardless of whether it would ultimately be admissible in evidence. Whether discovery is proportional depends, in part, on "the importance of the issues at stake . . . the parties' relative access to relevant information . . . the importance of the discovery in

---

[1] Originally, Stewart also withheld the responsive documents on the basis of attorney client privilege and work product protection. (R. Doc. 1-5 at 5-6). Stewart's Opposition makes clear however that it no longer claims the documents are privileged. (R. Doc. 5 at 3) (failing to argue privilege and describing the subpoena as seeking "production of the non-privileged portion" of Stewart's file).

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Rule 45 governs the issuance of subpoenas to obtain discovery from non-parties. Rule 45 subpoenas, like the one at issue here, are subject to the same discovery limitations outlined in Rule 26(b)(1). *See Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 596 (E.D. Tex. 2003). In addition, the serving party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

If the non-party timely objects, Fed. R. Civ. P. 45(d)(2)(B), the party that issued the subpoena may move to compel production of the requested documents "in the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i). The party moving to compel "bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence." *Tingle v. Hebert*, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016). If the court issues an order compelling production, that "order must protect [the] person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii).

## III. DISCUSSION

### A. Relevance

In a Chapter 11 bankruptcy proceeding, the court-appointed Trustee is charged with investigating the financial affairs of the debtor and compiling a complete list of the debtor's assets and liabilities in order to manage the estate. The Trustee assumes control of all assets of the estate and must ascertain the value of each individual asset and the estate as a whole. *See* 11 U.S.C. § 704(a)(1),(4) (trustee is charged with running the estate and assessing its value); 11 U.S.C. § 1106(a) (investigate financial condition of the debtor and, if debtor has not done so, file list required by debtor under § 521(a)(1)). In making this determination, the Trustee may rely on the debtor's

representations as to the existence and value of certain assets. *See In re Killebrew*, 101 B.R. 471, 474 (Bankr. S.D. Miss. 1988). Based on the value of the estate's assets, the Trustee in managing the estate may deem it necessary to liquidate certain assets in order to pay off creditors or otherwise satisfy debts. *See* 11 U.S.C. § 1123(a)(5)(D); *see also Matter of Vincent*, 7 B.R. 866, 870 (Bankr. M.D. Fla. 1980) (proposed plan contemplated selling assets of estate to pay off creditors).

In their Complaint filed in the Western District, the Firms claim that their investigative efforts on Ms. Fox's behalf uncovered vital information that allowed the Chapter 11 Trustee to avoid liquidation and significantly increased the value of the estate to the benefit of Ms. Fox and the creditors.[2] Complaint at 9-14. Specifically, the Firms allegedly uncovered "community assets of significant value that Rosbottom had illegally and fraudulently concealed" from the Trustee, "thereby substantially adding to the value of the Rosbottom bankruptcy estate for the benefit of Fox and the creditors." Complaint at 7, 9-14. The Firms further claim that they worked with the court-appointed "Trustee to preserve and protect [Ms. Fox's] equity interest in the bankruptcy estate and to identify additional assets that Rosbottom had concealed." Complaint at 10, 14. According to the Firms, the Trustee initially believed the estate's assets were not sufficient to pay the administrative claims in full, based on the representations of Rosbottom and his efforts to conceal certain assets. Complaint at 10. Without their efforts, the Firms' suggest, the Trustee likely would have liquidated assets at a severely reduced priced, or the estate otherwise would have been worth far less, leaving Ms. Fox with little to nothing in community property.

In their Motion to Compel, the Firms argue: "The documents requested are evidence as to the reasonableness of the Firms' [40-percent] contingency fee agreement under Louisiana Rule of Professional Conduct 1.5(a), and, if the agreement is not enforceable . . . the calculation of the fees

---

[2] The Court's discussion of the Firms' factual allegations is limited to those occurring during Stewart's representation of Rosbottom. Complaint at 9-14.

earned by the Firms on a quantum meruit basis." (R. Doc. 11 at 2). Both theories of recovery would require the Firms' to prove "the value of [their] services," *Delta Land & Investments, LLC v. Hunter Estates, Inc.*, -- So.3d -- , 2017 WL 104522, at *6 (La. App. 2 Cir. 2017), and the fact-finder to consider the quality, "extent[,] and character of the work performed . . . [and] . . . the ultimate result obtained," *Corey v. Brocato*, 626 F. App'x 480, 482, 483 n.4 (5th Cir. 2015). Therefore, the Firms suggest the documents are discoverable as they relate to Stewart's (and Phillips') "present sense impression of . . . the precarious state of the bankruptcy estate at various points in the proceeding, the possibility of the liquidation of some or all of the assets of the bankruptcy estate, and the scope and nature of the work performed by the Firms on behalf of Fox." (R. Doc. 11 at 3).

Stewart responds that its communications with Phillips cannot be relevant to the reasonableness of the contingency fee agreement or whether it was breached by Ms. Fox, as Stewart had no knowledge of the agreement until now. (R. Doc. 5 at 8-9). Additionally, Stewart suggests the Firms' "'unique insights' and 'impressions' argument" indicates their desire to impermissibly "use [Stewart's] and Phillips' 'impressions' as quasi-expert testimony. That is, the Firms want to know . . . whether [Stewart] and Phillips thought they were doing a good job," and if so, use those favorable impressions to show the quality of the Firms' work. (R. Doc. 5 at 7). Because these "impressions" "clearly" amount to "subjective beliefs and [are] at best speculative," Stewart argues, the Motion must be denied as "expert testimony is not admissible when it is based merely on subjective belief or unsupported speculation." (R. Doc. 5 at 7-8).

First, Stewart's suggestions that the communications are irrelevant to whether Ms. Fox breached her obligations under an agreement Stewart knew nothing about is not persuasive. Stewart ignores Ms. Fox's claim that the 40-percent fee is unreasonable and renders the agreement unenforceable, to which the Court agrees with the Firms that the documents are relevant.

Shortly after the appointment of the Trustee in the bankruptcy proceeding, Stewart was retained by Rosbottom in March of 2010 to "negotiate . . . compensation and other remuneration" with the Trustee on Robsottom's behalf. Ex. A to Mot. to Enroll at 1, *In re Rosbottom* (*Rosbottom Bankr.*), No. 09-11674 (Bankr. W.D. La. March 30, 2010), ECF No. 952-1. Prior to and during Stewart's representation,[3] the Firms allege that Rosbottom concealed community assets of significant value from the Trustee to avoid those assets being included in the bankruptcy estate. Compl. at 9-14. The Firms allege that those assets were only uncovered due to their investigative efforts, and disclosed to the Trustee, thereby enhancing the value of the estate to the benefit of Ms. Fox.

Considering the allegations and Stewart's role as Rosbottom's negotiator, Stewart's communications with Phillips could reasonably show the assets (and other financial information) disclosed by Rosbottom to the Trustee and the Trustee's impression as to the solvency and value of the estate based on Rosbottom's representations. In other words, the communications would indicate which assets and liabilities the Trustee would not have been aware of, but for the Firms' investigative efforts on behalf of Ms. Fox.

A comparison of the bankruptcy estate's perceived value, and the factual basis for such value (based on the information supplied by Rosbottom), along with that of the value demonstrated by the alleged contributions of the Firms, could indicate how the Firms' contribution added to the value of the estate, if any. The factual support for such information could demonstrate any benefit derived by Ms. Fox. As such, Stewart's communications with Phillips regarding the Bankruptcy Proceeding are relevant to the issues presented in this litigation. *See Fowler v. Johnson*, 430 So.2d 711, 715 (La. App. 2d Cir. 1983) ("A quantum meruit analysis properly evaluates not merely the

---

[3] Stewart representation of Rosbottom ended in March of 2012. Order Granting Mot. to Withdraw, *Rosbottom Bankr.*, ECF No. 1546.

hours expended, but the results and benefits obtained."); *Corey v. Brocato*, 626 F. App'x 480, 483 (5th Cir. 2015) (comparing the individual contribution of two attorneys to the litigation to determine the value of the first attorney's work); *In re McInerney*, 530 B.R. 671 677-78 (Bankr. E.D. Mich. 2015) (one million dollar cash value added to bankruptcy estate was ninety percent attributable to efforts of debtor's first attorney, while remaining ten percent was attributable to efforts of second attorney for purposes of quantum meruit fee).

Finally, Stewart's suggestion that the Motion be denied as it seeks inadmissible quasi-expert testimony is not sufficient to quash the subpoena. Specifically, Stewart believes that the Firms simply want to know "whether [Stewart] and Phillips thought they were doing a good job," and if so, use those favorable impressions as quasi-expert evidence of the quality of the Firms' work. (R. Doc. 5 at 7). Because these "impressions" "clearly" amount to "subjective beliefs and [are] at best speculative," Stewart argues the Motion must be denied, as "expert testimony is not admissible [under Rule 702] when it is based merely on subjective belief or unsupported speculation." (R. Doc. 5 at 7-8).

To begin, documents are not beyond the scope of discovery simply because they may be inadmissible at trial. *See* Fed. R. Civ. P. 26(b)(1). Moreover, the Firms do not suggest an intent to rely solely on any opinions expressed by either Stewart or Phillips as to the quality of the Firms' work. Finally, the admissibility of such evidence is within the sole discretion of the trial judge.

Nonetheless, courts considering the reasonableness of an attorney's fee request have allowed opposing (or other participating) counsel with personal knowledge of the attorney's efforts and the issues involved in the litigation to offer lay opinions regarding the quality of that attorney's work and its importance to the litigation. *See In re Holocaust Victim Assets Litigation*, 270 F. Supp. 2d 313, 317 (E.D.N.Y. 2002) (opposing counsel had personal knowledge of litigation and requesting attorney's efforts and was therefore able to offer lay opinion as to quality of attorney's work in

support of attorney's request for fees); *Field v. Fireman's Fund Insurance Company*, -- F. Supp. 3d --, 2016 WL 4742224, at *9-10 (D.D.C. 2016) (opposing counsel, who participated in and had personal knowledge of the litigation, could offer lay opinion as to reasonableness of fees and expenses requested by attorney moving to recover fees and expenses).

In addition, even if a responsive communication only contains a subjective belief about the Firms' involvement, the underlying facts or support for such belief would be relevant. Even if not expressed directly in such communication, the timing of such communications, and how they may have changed over the course of the Firms' involvement, could likewise provide insight into the value of Firms' contributions in the course of the bankruptcy proceeding.

**B.    Overbreadth**

Stewart next argues that discovery must be denied because the subpoena is not sufficiently limited in time or scope. According to the record in the Bankruptcy Proceeding, Louis M. Phillips became counsel of record for the Trustee on February 25, 2010. Order Granting Mot. to Enroll Phillips, *Rosbottom Bankr.*, ECF No. 887. Stewart became counsel of record for Rosbottom on March 31, 2010. Order Granting Mot. to Enroll Stewart, *Rosbottom Bankr.*, ECF No. 954. Stewart later withdrew as counsel of record on May 23, 2012, at which time, Phillips was still counsel of record for the Trustee. Order Granting Mot. to Withdraw, *Rosbottom Bankr.*, ECF No. 1546. Stewart complains that the subpoena is overly broad as it does not contain any express time limitations. The Court agrees and finds that the only documents or communications relevant to the claims in the underlying suit are those generated between March 31, 2010 and May 23, 2012.

Moreover, the Court agrees that the subpoena is overly broad to the extent it seeks communications and documents related to the current litigation (which was filed over 4 years after Stewart withdrew as counsel of record), or solely to Ms. Fox — meaning, communications about Ms. Fox outside the context of either the Bankruptcy Proceeding or the Firms' representation of Ms.

Fox. As such, the Court will limit the scope of the request to only those communications and documents relating to the Bankruptcy Proceeding, or the Firms' representation of Ms. Fox, that were generated between March 31, 2010 and May 23, 2012 — during Stewart's representation of Rosbottom.

C. **Burden and Expense of Production**

Stewart complains that compliance with the subpoena would be unduly burdensome and expensive because it is a small firm and because the communications are more readily available from a party to the litigation—Ms. Fox, as she is now represented by Mr. Phillips.

First, Stewart's suggestion that the communications should be requested from Ms. Fox pursuant to Rule 34 as they are readily available through her current attorney, Mr. Phillips, is misguided. Under Rule 34, a party is only required to produce responsive documents within their "possession, custody or control." Documents are deemed to be within the "possession, custody or control" of a responding party if that party either has "actual possession, custody or control" of the documents or if that party "has the legal right to obtain the documents on demand or has the practical ability to obtain the documents from a non-party to the action." *Estate of Monroe v. Bottle Rock Power Corp.*, 2004 WL 737463, at *10 (E.D. La. April 2, 2004).

However, documents within Ms. Fox's "counsel's files from prior, unrelated cases are not within [her] control." *Montgomery v. Wal-Mart Stores, Inc.*, 2015 WL 11233385, at *2 (S.D. Cal. Sept. 18, 2015) (documents in plaintiff's counsel's file from prior unrelated litigation are not within plaintiff's control). "Indeed, a document in an attorney's possession is within a party's possession or control only if the attorney comes into possession of the document as *attorney for that party*." *In re Terrorist Attacks on September 11, 2001*, 293 F.R.D. 539, 547 (S.D.N.Y. 2013). As such, documents and communications generated by Mr. Phillips while representing the Trustee during the

Bankruptcy Proceeding are not now within the control of Ms. Fox simply because she has hired Mr. Phillips to represent her in the current litigation.

Next, Stewart argues that compliance with the subpoena would be unduly burdensome and expensive because it is a small law firm. "Broad-based, non-specific objections" that discovery requests are oppressive or unduly burdensome "are almost impossible to assess on their merits, and fall woefully short of the burden that must be borne by a party making an objection" to a request for documents. *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006). Rather, a party asserting undue burden must typically present "affidavits or other evidence" demonstrating the time, expense or nature of the burden involved in responding to the discovery request. *Heller v. City of Dallas*, 303 F.R.D. 466, 490 (N.D. Tex. 2014); *see also U.S. ex rel. Fisher v. Network of Software Associates*, 217 F.R.D. 240, 246 (Aug. 28, 2003) ("The court entertains the burdensome objection only when the responding party demonstrates how the document is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden.").

In support of the claim, Stewart offers no evidence and fails to specifically address the amount or even type of expenses referred to in its Opposition. Its general allegations regarding the expense of compliance are therefore insufficient to relieve Stewart of its obligation to provide responsive documents. The court has also further limited the scope of the subpoena beyond the limitations agreed to by the Firms. As such, any perceived undue burden will be further reduced.

## IV. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Firms' Motion to Compel is **GRANTED in part** and **DENIED in part** to the extent the request is limited by the Court below. Therefore, Stewart is **ORDERED** to produce the following documents and communications on or before **May 30, 2017**:

> All documents and communications sent to or received from Louis M. Phillips between March 31, 2010 and May 23, 2012 that relate to the Bankruptcy Proceeding[4] or the Firms' representation of Ms. Fox during the Bankruptcy Proceeding, excluding any documents or communications that were also sent to the Firms.

Signed in Baton Rouge, Louisiana, on May 9, 2017.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[4] The term 'Bankruptcy Proceeding' refers to: *In re Harold L. Rosbottom, Jr.*, No. 09-11674 (Bankr. W.D. La. filedMay 9, 2017 June 9, 2009), and *In re Caddo-Bossier Gaming Company, L.L.C.*, No. 09-11673 (Bankr. W.D. La. filed June 9, 2009).